## Matz v. City of Newport, Campbell County.
### (Decided June 23, 1936.)

CONRAD G. MATZ for appellants.

LOUIS REUSCHER for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

Appellee, a city of the second class operating under the commission plan of government, on June 2, 1936, by its commissioners adopted an ordinance authorizing the issuance of $250,000 of 4 per cent. bonds, maturing serially over a period of twenty years, provided that upon submission to a court of jurisdiction, as required by section 186c-6, Ky. Stats. 1933 Supp., such court should approve its action. In the ordinance and by the petition and exhibits the following facts are exemplified.

The city is authorized under section 157 of the Constitution to levy a tax rate not exceeding $1.50 on each $100 valuation of the taxable property for the purposes of defraying governmental expenses. During the years 1932 to 1935, inclusive, the levied tax rate averaged $1.26, which the commissioners say they in good faith believed at each levying date would provide funds sufficient to meet all necessary governmental expenses, and would have done so but for unforeseen occurrences, to wit, the collections of water rents, revenues, and other income, during the period named, fell off year by year, until the total amounted to $270,-515.03 as of June 1, 1935, and during each of these years, in addition to the failures in revenue certain unanticipated economic conditions were required to be

met. At the date of the passage of the ordinance the city found itself with a floating indebtedness of $254,983.89, evidenced by outstanding warrants, bearing interest at from 4½ to 6 per cent. per annum, the warrants in the main issued for money borrowed from time to time, and expended for necessary municipal expenses.

In November, 1935, the city of Clifton was in the manner provided by section 3050a, Ky. Stats. 1930, annexed to Newport, and the latter city inherited a floating indebtedness of $7,942.89, including two judgments against Clifton amounting to $1,232. Without an attempt to reconcile figures used in the ordinance with those in pleadings and briefs, it is sufficient to say that Newport pleads and shows that its total floating indebtedness as of June 1, 1936, including that laid in its lap by Clifton, was approximately $260,431.26.

The city, by its commissioners pleads its inability to meet payments of its floating indebtedness out of current revenues and incomes, and say that in their judgment the only recourse is to issue bonds as authorized by the ordinance, thus spreading the payment of its indebtedness over a period of twenty years, and securing a considerable saving in interest payments.

It is pleaded and amply shown that when Clifton was annexed there was a deficiency in its revenue collections and other income for the years in question of approximately $30,000. Newport acquired by annexation a taxable property value of about $3,000,000. The taxable values of Newport, during the years in which the debt was accrued, were for 1931 and 1932 more than $24,000,000; for 1933 to 1935, inclusive, more than $23,000,000; after annexation, the total taxable value was around $26,000,000. It was and is claimed in resolution and pleadings that at no time during the years mentioned, did the total indebtedness of Newport exceed 10 per cent. of the assessable property valuation as shown by the assessments next before the last assessment previous to the incurring of the indebtedness, and that none of the indebtedness incurred by each city in each year exceeded the income and revenues provided for the respective years; that all the debts were legally created for necessary governmental expenses.

After the passage of the ordinance, the city, undertaking to comply with section 186c-6 et seq., Ky. Stats. Supp. 1933, and pursuing the course provided by section 639a-1 et seq., Civil Code of Practice, filed its petition seeking approval of its proposed bond issue, wherein the facts above detailed were substantially pleaded. Appellant, a citizen and taxpayer, was named as a party defendant and called upon to appear and defend for himself and for all others similiarly situated, which he did, filing answer, showing that a bona fide controversy existed, admitting that he was without sufficient knowledge or information as to many facts alleged in petition as to taxable values, debts, etc., specifically calling upon the city to fully comply with section 186c-7, Statutes of 1933 Supp., as amended by chapter 21, Acts 1936.

The cause was submitted upon the pleadings, exhibits, and proof, and the court after holding that the proceeding was proper; that the court had jurisdiction, adjudged it had been sufficiently alleged and shown by proof that the debts of the city of Newport, together with the inherited indebtedness of Clifton, were all lawfully created and were within the constitutional limitations and without the inhibitions; that each item of indebtedness aggregating $260,143.26 constituted legally contracted and binding obligations against Newport; that both cities had received value for the expenditures, same having been made for necessary governmental expenses contracted legally in the management of their respective municipal affairs. It was also found that the cities' authorities had observed due regard for the finances of the cities, and that the proceedings by which Clifton was annexed to Newport were in conformity to the laws relating thereto. It was also found that the provisions of the Constitution with respect to the issuance of the $250,000 of funding bonds had been strictly observed, and the issue was therefore fully approved in all respects. To a judgment thus approving the acts of the city of Newport, exceptions were taken and appeal granted.

It was shown that while the combined indebtedness of the cities was $260,431.26, there was in the Newport treasury, available for payment thereon, the sum of $10,431.26, which was pledged to be paid on the

oldest outstanding obligations; hence the necessity of issuing only $250,000 in bonds.

With respect to the proof introduced, we are of the opinion that it measured fully up to the requirements of section 186c-7, Ky. Stats., 1933 Supp., as amended. In addition to a very comprehensive and complete audit of the books of both Newport and Clifton covering the years 1932 to 1935, inclusive, fiscal officers of both cities were introduced and testified at length regarding the contracting of debts, their legality, and all other matters pertinent to such judicial inquiry as is required by the statute supra.

It was on these facts thus presented the court found that Newport was within its rights in ordering the issuance of bonds. Counsel for appellant presents three grounds for our consideration, any one of which it is contended is sufficient to demonstrate that the court below was in error, as follows:

(1) The only authority for the issuance of funding bonds by second class cities is to be found in sections 3088, 3090 and 3091, Ky. Stats., which are inapplicable to and do not authorize the issuance of bonds for indebtedness such as is set out in the petition.

(2) The floating indebtedness of a city of the second class must be paid out of the succeeding year's revenue accruing to the general fund; if invalid, it may not be paid at all.

(3) The city of Newport has no lawful right to assume and pay the indebtedness of Clifton, existing at the time of annexation.

Taking up together objections 1 and 2, we agree that as set out in the latter part of 2, the city cannot legally assume or pay any indebtedness which is illegal, or was so when contracted. However, we have undertaken to point out above that the debts of both cities were proven to be legal, and that singly or in connection with all others made for the various years, did not exceed the revenue that could have been produced that year (Const., sec. 157), had the maximum been levied, and had there been no failure in revenue and income.

The remaining portions of objections 1 and 2 are, with one exception, fully and completely answered by

the opinion of this court in Hill v. City of Covington, 264 Ky. 618, ——S. W. (2d) ——, decided June 5, 1936; so completely so that we will merely refer the reader to that opinion.

The exception above mentioned relates to the two judgments against Clifton and taken over by Newport. Counsel contends that these should not have been declared legal because of a failure to file with the copies of the judgments the pleadings and proof upon which they were based. One of these judgments was for $1,000, of date February 28, 1935, rendered following a verdict by a jury allowing a resident that amount for damages to her property. It may be readily assumed that the verdict was justified by the pleadings and sufficient proof. The other was a judgment for a claim of $232 for fire hose furnished to Clifton, and appears to have been a default judgment in due form. However, it is not necessary to pass on the question of whether there was or not compliance with the act supra, since it is clearly established that Newport owed Clifton something like $1,500, and took over $6,-500 cash at the time of annexation, and Newport has $10,000 or more on hand, pledged to the payment of debts. A simple transaction in bookkeeping will wipe out the Clifton floating debt, including the judgments, though to that extent Newport's indebtedness would be increased.

Taking up the third contention urged by appellant, which on the whole seems to be a charge that Newport only "attempted" to annex Clifton, hence its assumption of the latter's indebtedness was illegal: This is but a collateral attack on the procedure by which the annexation was consummated. Upon observation the procedure appears to have been in conformity to the statutes authorizing the annexation. Any citizen and taxpayer within proper limitations may contest the result of the procedure, thereby challenging the assumption of the debt.

But counsel says that Clifton's audit shows a bonded indebtedness of $63,200, and in this he is correct, and argues more in view of the statutes, supra, that its assumption by Newport is contrary to law because by its inclusion in the 1935 indebtedness the total

exceeds the amount of revenue and income for the year 1935. When the annexation took place, the bonded debt of Clifton at that moment became a bonded indebtedness of Newport. If Clifton's bonded debt is to be added, so should the same character of debt of Newport. If this be done, section 157 of the Constitution would be violated. Looking to the audit, we find the bonded indebtedness consisting of five items, waterworks, sewer, and funding bonds having been issued beginning with 1919 and running to 1932, with maturities and interest payments running through years to come. Neither of these bonded debts is to be considered in applying the prohibition of section 157 of the Constitution. If the debts were valid when created, it is only necessary to charge up the amount or interest and sinking fund that must be set apart for the current year. Hogan v. Lee Fiscal Court, 235 Ky. 100, 29 S. W. (2d) 611; City of Frankfort v. Fuss, 235 Ky. 143, 29 S. W. (2d) 603. It has been held that the bonded indebtedness must be included when observing section 158 of the Constitution. City of Winchester v. Nelson, 175 Ky. 63, 193 S. W. 1040. But even so, the bonded debt of Newport with the bonded debt of Clifton, plus the amount of floating indebtedness of both, would result in a total within the 10 per cent. of the total assessment value of all taxable property in the merged cities.

On a levy of $1.50 per hundred, it is possible to provide on the approximate $27,000,000 value of property a revenue of more than $400,000; other estimated income will increase estimated receipts to over $500,000. Such a sum will, as shown, be more than sufficient to meet the debt existing and incurred in 1935, taking into consideration all debts which are to be included. By reference again to Hill v. City of Covington we express the opinion that appellants' third contention is therein fully met.

The court had before it all the facts and data above detailed, and in addition proof showing the entire indebtedness, both floating and bonded, for each of the years in question, including current expenses for the year 1935, and it was found that the debts which were necessarily included in determining whether in that year the indebtedness which might have been con-

tracted, did not exceed the revenue for each of these years, thus keeping the city within the terms of section 157.

So, having before it all these facts, the court correctly concluded that in the proposed issue of bonds, neither section 157 or 158 was violated, nor were any of the statutes relied upon by appellant transgressed; hence we see no reason why the judgment of the lower court should be disturbed, and it is therefore affirmed.

Judgment affirmed.